THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION CINCINNATI

A BRIAN MCINTOSH,

   Plaintiff,

  vs.

CONTROLLED CREDIT
CORPORATION,  ET AL.,

   Defendants.

Case No.1:17-CV-00009-MRB

Judge Michael R Barrett

## ORDER

This matter is before the Court on: (1) Defendant The Christ Hospital's Motion for

Summary Judgment (Doc. 17); (2) Defendant Controlled Credit Corporation's Motion for

Summary Judgment (Doc. 16); and (3) Defendant Controlled Credit Corporation's

Motion to Strike (Doc. 22), which asks the Court to strike Plaintiff's late opposition brief

and affidavit in support.  The foregoing motions are fully briefed and ripe for disposition.

## I.  BACKGROUND

On January 4, 2017, this case was removed to the docket of the undersigned

from Hamilton County Municipal Court.  (Doc. 1).  In his Amended Complaint (Doc. 6),

Plaintiff alleges that: (1) Defendant The Christ Hospital is liable for breach of contract;

(2) Defendant The Christ Hospital is liable for violations of Ohio Rev. Code §§ 1345.02

and 1345.03(B)(4);[1] and (3) Defendant Controlled Credit Corporation is liable for

violations of the Fair Debt Collection Practices Act.  Shortly after removal, each

---

[1] The Court assumes that Plaintiff's references to Ohio Rev. Code § 1345.03(4) are typographical errors.

1

Defendant answered. (Docs. 7, 8). Defendant The Christ Hospital asserted a counterclaim ("Account Stated") for the amount of $2,682.00. (Doc. 8, PageID 62).

The Parties agree that, on or about May 26 and 27, 2016, Plaintiff (an attorney) was hospitalized at The Christ Hospital. (Doc. 18, PageID 230).[2] Plaintiff's insurance carrier is Anthem Blue Cross and Blue Shield ("Anthem"). Defendant The Christ Hospital has a facility agreement ("Agreement") with Anthem which provides, in pertinent part, that The Christ Hospital may collect reimbursement from an insured for "cost shares," defined as: "an amount which [an insured] is required to pay under the terms of the applicable [insurance policy]. Such payment may be referred to as an allowance, coinsurance, copayment, deductible, penalty, or other [insured] payment responsibility…". (Doc. 17-1, Hicks Aff., ¶5); (Doc. 17-2, Agreement, PageID 152, 155-56).

On May 26, 2016, Plaintiff signed upon admission to The Christ Hospital a "Consent for Hospital and Medical Treatment," which included a financial agreement that Plaintiff would "pay the amount of the *hospital bill and* any *physician charges* in accordance with their regular rates and terms." (Doc. 17-1, Hicks Aff., ¶6); (Doc. 17-3) (emphases added). Defendant The Christ Hospital initially classified Plaintiff's medical service as "inpatient." However, when Defendant The Christ Hospital requested authorization from Anthem for the inpatient stay, Anthem determined that the requested service met the criteria for medical necessity as defined in Plaintiff's plan but that the inpatient setting was not medically necessary. (Doc. 17-1, Hicks Aff., ¶8). Therefore,

---

[2] The Court identifies Plaintiff's profession because his damages-based arguments make reference to lost "billable hours." (Doc. 19, PageID 266).

on May 27, 2016, Defendant The Christ Hospital retroactively changed Plaintiff's classification from "inpatient" to "observation" status. (*Id.* at ¶9) (Doc. 17-4).

The total amount incurred for Plaintiff's medical services was $29,460.54. (Doc. 17-1, Hicks Aff., ¶10) (Doc. 17-5). The Christ Hospital submitted the claim to Anthem on June 7, 2016. (Doc. 17-1, Hicks Aff., ¶11). On July 11, 2016, Anthem paid $10,949.45, and the amount of $16,303.54 was adjusted as a contractual writeoff. (Doc. 17-1, Hicks Aff., ¶12). The balance remaining as Plaintiff's responsibility for payment was $2,207.55, which sum included a coinsurance amount of $1,977.55 and a co-payment amount of $250.00, *i.e.,* Plaintiff's alleged "cost shares." (*Id.* at ¶14)

Separately, Plaintiff also incurred physician services charges totaling $1,300.00. (*Id.* at ¶15). A portion of that amount was contractually written off, with Anthem paying a total of $99.03. (*Id.*) The balance of $482.82 was billed to Plaintiff. (*Id.*)

Plaintiff asserts that the above-referenced charges were calculated based on an "inappropriate change in status." (Doc. 18, PageID 230). Plaintiff appears to argue that the change in status resulted in an unquantified amount of additional charges that would not have been billed to Plaintiff had he been invoiced as an inpatient. (*Id.* at 265) ("Mr. McIntosh recognizes that there may be *some* sum due[.]") (emphasis added). Defendant The Christ Hospital agrees that Plaintiff's status was changed retroactively, but asserts that it was contractually authorized to invoice Plaintiff as it did. (Doc. 19, PageID 264). Accordingly, Defendant The Christ Hospital sent several statements to Plaintiff's address regarding Plaintiff's accounts, the balances due, and instructions for payment of the amount owed to Defendant The Christ Hospital for both accounts. (Doc. 17-1, Hicks Aff., ¶¶17-19).

The physician services bills, associated with Account No. 6868, were sent to Plaintiff with the following header: "This is a bill from your physician." (Doc. 17-7). The bills instructed that payment be made to "The Christ Hospital Medical Specialists, LLC." (*Id*). All other bills, associated with Account No. 6068, were for hospital charges. (Doc. 17-8). The hospital bills included the following header: "This is a bill from the hospital." (*Id.*)

On September 8, 2016, Plaintiff responded to Defendant The Christ Hospital's August 28, 2016 itemized bill. (Doc. 6, PageID 41). In his written response, Plaintiff advised Defendant The Christ Hospital that his insurer, Anthem UM Services, Inc. ("Anthem"), stated that he "would not be financially liable for the cost of services listed above unless [he] had signed a specific agreement (financial waiver accepting responsibility for the charges in advance of receiving the services after having been informed that your health plan would not cover the service[ )]." (*Id.*) Plaintiff's September 8, 2016 response to Defendant The Christ Hospital enclosed the August 26, 2016 letter that he had received from Anthem, and instructed The Christ Hospital to "take it up" with Anthem "if you have an issue with additional payment on this matter[.]" (*Id.* at PageID 41-42).

After September 8, 2016, Defendant The Christ Hospital sent Plaintiff a second itemized bill in connection with the medical services he had received. (*Id.* at PageID 36).

On October 6, 2016, Plaintiff wrote to Defendant The Christ Hospital again. (*Id.* at PageID 43). In this letter, Plaintiff reiterated that Anthem had informed him that he did not "owe any additional funds on this bill." *Id.*

4

On October 23, 2016, The Christ Hospital Medical Specialists, LLC placed two debts totaling $482.82 in Plaintiff's name with Defendant Controlled Credit Corporation for collection. (Doc. 16-1, Stockelman Aff., ¶5) (Doc. 7, PageID 47).

Defendant Controlled Credit Corporation asserts that, on October 26, 2018, it sent Plaintiff the initial notice regarding his debts to The Christ Hospital Medical Specialists, LLC, and the total balance of $482.82 owed by Plaintiff. (Doc. 16-1, Stockelman Aff., ¶6). Defendant Controlled Credit Corporation has submitted to the Court a copy of the initial notice it mailed. (Doc. 7-1)(Doc. 16-1, Stockelman Aff., ¶6). Defendant Controlled Credit Corporation maintains that the initial notice includes all disclosures required by 15 U.S.C. § 1692g. Plaintiff maintains that he never received the notice (Doc. 18, PageID 231). Defendant Controlled Credit Corporation avers that the initial notice was never returned as undeliverable. (Doc. 16-1, Stockelman Aff., ¶6).

On November 15, 2016, Defendant Controlled Credit Corporation's second letter was sent to Plaintiff regarding his debts to The Christ Hospital Medical Specialists, LLC. (Doc. 6, PageID 44).

On November 21, 2016, Plaintiff wrote a letter to Defendant Controlled Credit Corporation. (*Id.* at PageID 45). Defendant Controlled Credit Corporation received this letter on November 28, 2016. (Doc. 16-1, Stockelman Aff., ¶ 8). In his letter, Plaintiff denied owing the debt, requested verification of the debt, and notified Defendant Controlled Credit Corporation that he was represented by counsel. (Doc. 6, PageID 45). Plaintiff's letter also accused Defendant Controlled Credit Corporation of omitting certain disclosures required by the FDCPA. (*Id.*)

On December 1, 2016, Defendant Controlled Credit Corporation requested an itemized statement from The Christ Hospital Medical Specialists, LLC regarding Plaintiff's debts. (Doc. 16-1, *Stockelman Aff., ¶9*).

On December 5, 2016, Plaintiff filed a *Complaint for Statutory Damages Under the Fair Debt Collection Practices Act, Pursuant to 15 U.S.C. §1692(B1)(B2)(B3)(B4), ET SEQ and Ohio Revised Code §1319.12 et seq* ("Complaint") against Defendant Controlled Credit Corporation in the Hamilton County, Ohio, Municipal Court. (Doc. 5).

On December 7, 2016, Defendant Controlled Credit Corporation ceased all collection efforts related to Plaintiff's debts to The Christ Hospital Medical Specialists, LLC. (Doc. 16-1, Stockelman Aff., ¶10).

On December 30, 2016, Plaintiff filed his Amended Complaint against Defendants Controlled Credit Corporation and The Christ Hospital. (Doc. 6).

## II.   ANALYSIS

### A.  Motion to Strike (Doc. 22)

#### 1.  Untimely Opposition

Defendant Controlled Credit Corporation correctly observes that Plaintiff filed his summary judgment opposition eleven days late, without leave. (Doc. 22). Defendant Controlled Credit Corporation thus asks this Court to strike the untimely filing.

Before addressing the standard for accepting a late filing, the Court would observe that even where a motion for summary judgment is unopposed, a district court must review carefully the portions of the record submitted by the moving party to determine whether a genuine dispute of material fact exists. *F.T.C. v. E.M.A. Nationwide, Inc.*,767 F.3d 611, 629 (6th Cir. 2014). *Accord: Smith v. Hudson*, 600 F.2d

60, 64 (6th Cir. 1979) ("A party is never required to respond to a motion for summary judgment in order to prevail since the burden of establishing the nonexistence of a material factual dispute always rests with the movant.").  This Court's local rules also acknowledge that the Court may not grant summary judgment solely on the basis that a party has failed to oppose.  S.D. Ohio Local Rule 7.2(a)(2) ("Failure to file a memorandum in opposition may result in the granting of any motion that would not result directly in entry of final judgment or an award of attorneys' fees.").  So, even if the Court were to strike or disregard the untimely opposition, the Court would still review "carefully the portions of the record submitted by the moving party to determine whether a genuine dispute of material fact exists." *FTC*, 767 F.3d at 630.

The acceptance of a late filing is governed by Fed. R. Civ. P. 6(b), which provides that when a party moves the Court to accept a filing after the relevant deadline, the Court may "for good cause, extend the time [...] if the party failed to act because of excusable neglect."  The Court balances four factors when determining whether to permit a late filing: (1) the danger of prejudice to the nonmoving party, (2) the length of the delay and its potential impact on judicial proceedings, (3) the reason for the delay, including whether the delay was within the reasonable control of the moving party, and (4) whether the late-filing party acted in good faith.  *United States v. Munoz*, 605 F.3d 359, 368 n. 5 (6th Cir. 2010) (citing *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395, 113 S. Ct. 1489, 123 L. Ed. 2d 74 (1993)).  "The *Pioneer* factors 'do not carry equal weight; the excuse given for the late filing must have the greatest import. While [the others] might have more relevance in a closer case, the reason-for-delay factor will always be critical to the inquiry.'"  *Munoz*, 605 F.3d at 372

(quoting *Lowry v. McDonnell Douglas Corp.*, 211 F.3d 457, 463 (8th Cir. 2000)) (alteration in *Munoz*) (citations omitted). The burden of showing that a failure to act was the result of excusable neglect is to be borne by the party seeking relief under Rule 6(b). *D.B. v. Lafon*, No. 3:06-CV-75, 2007 U.S. Dist. LEXIS 20609 (E.D. Tenn. Mar. 22, 2007).

Here, Plaintiff explains that the late filing was caused by mistaken reliance on the wrong set of local rules, which his counsel located using a "web search." (Doc. 25, PageID 321). This Court makes its local rules, general orders, and standing orders available on its website. Attorneys admitted to practice in this district – including Plaintiff and his counsel – are expected to rely on current local rules, general orders, and standing orders published via official sources, rather than rules identified through a "web search." (*Id.*) However, Plaintiff persuasively argues that the delayed filing has not prejudiced Defendants. Furthermore, the information before the Court does not support a finding of bad faith. Therefore, the Court will remind Plaintiff and his counsel of their obligation – as members of the Southern District of Ohio's bar – to consult official sources in order to access all applicable local rules and standing orders; however, the Court will not strike or disregard the opposition briefs. Accordingly, the briefs (Docs. 18, 19) are accepted for filing.

### 2. Defective Affidavit

Defendant Controlled Credit Corporation also moves to strike Plaintiff's affidavit (Doc. 18-1, PageID 253-257) submitted in support of his opposition papers, observing that in order for an affidavit to be permissible it must (1) be made on personal knowledge, (2) set out facts that would be admissible in evidence, and (3) show that the

8

affiant is competent to testify on the matters stated.  (Doc. 22, PageID 305) (citing *In re Holsinger*, 437 B.R. 260, 267 (S.D.Ohio 2010); Fed. R. Civ. P. 56(e)).  Defendant Controlled Credit Corporation argues that Plaintiff fails to state that his affidavit is based on personal knowledge, or detail how he is competent to testify on the matters stated. (Doc. 22, PageID 305).  Defendant Controlled Credit Corporation also argues that Plaintiff's affidavit impermissibly sets forth a legal conclusion disguised as a fact allegedly within Plaintiff's personal knowledge.  Specifically, the affidavit states that Controlled Credit Corporation's November 15, 2016 correspondence to him "was deficient as it related to the Fair Debt Collection Practices Act."  (Doc. 18-1, PageID 254).

Defendant Controlled Credit Corporation's argument is well taken.  The Court will thus disregard the affidavit to the extent that Plaintiff uses it to support a legal conclusion or proposition requiring personal knowledge.  *See Harrah's Entm't, Inc. v. Ace Am. Ins.*, 100 Fed.Appx. 387, 394 (6th Cir. 2004); *F.R.C. Int'l, Inc. v. U.S.*, 278 F.3d 641, 643 (6th Cir. 2002); *Allied Constr. Indus. v. City of Cincinnati*, 214 F.Supp.3d 653, 658-659 (S.D.Ohio 2016).

### B.  Motions for Summary Judgment

#### 1.  Standard

Federal Rule of Civil Procedure 56(a) provides that summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  A dispute is "genuine" when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202

(1986).  A court must view the evidence and draw all reasonable inferences in favor of the nonmoving party.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986).  The moving party has the burden of showing an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).

Rule 56(c) explains in relevant part that a party asserting that a fact cannot be genuinely disputed must support the assertion by citing to "particular parts of materials in the record, including depositions, documents...affidavits or declarations, stipulations..., admissions, interrogatory answers, or other materials" or alternatively by showing that the adverse party "cannot produce admissible evidence to support the fact."  This Court must consider the cited materials, but "may" consider other materials in the record.  Rule 56(c)(3).

Once the moving party has met its burden of production, the nonmoving party cannot rest on his pleadings, but must present significant probative evidence in support of his complaint to defeat the motion for summary judgment.  *Anderson*, 477 U.S. at 248-49. The mere existence of a scintilla of evidence to support the nonmoving party's position will be insufficient; the evidence must be sufficient for a jury to reasonably find in favor of the nonmoving party. *Id.* at 252.

2.  Motion for Summary Judgment of Defendant The Christ Hospital

a.  Breach of Contract

Defendant The Christ Hospital asks for judgment in its favor on Plaintiff's contract claim.  To prove a breach of contract under Ohio law, Plaintiff must establish: (1) the

existence of a contract; (2) performance by plaintiff; (3) breach; and (4) damages or loss to the plaintiff. *Copley v. Medpace, Inc.*, No. 1:12-cv-426, 2014 U.S. Dist. LEXIS 175751, at *11–12 (S.D. Ohio Dec. 19, 2014) (quoting *Doner v. Snapp*, 98 Ohio App. 3d 597, 649 N.E.2d 42, 44 (Ohio App. Ct. 1994)).

In his amended complaint (Doc. 6), Plaintiff pursues the theory that he is a third-party beneficiary of The Christ Hospital's agreements with Anthem. He specifically asserts in his amended complaint that The Christ Hospital is in breach because The Christ Hospital was only authorized to bill Plaintiff for charges governed by a "service-specific agreement" signed by Plaintiff. (Doc. 6, PageId 36). In his opposition brief, Plaintiff seemingly changes theories and argues that some implied duty was breached: "[i]t is a patent breach when the TCH, [which] is responsible for the medical care of Mr. McIntosh, succumbs to an insurance company's determination . . . and retroactively change[s] the status of the patient directly affecting the patient's financial responsibilities without even informing him of such." (Doc. 19, PageID 266).

Accepting without finding that Plaintiff is a third-party beneficiary of the facility agreement with Anthem, Plaintiff fails to identify any provision, in any contract, that was breached. Indeed, the executed financial agreement between Plaintiff and The Christ Hospital stated that Plaintiff would "pay the amount of the *hospital bill <u>and</u>* any *physician charges* in accordance with their regular rates and terms." (Doc. 17-1, Hicks Aff., ¶6); (Doc. 17-3) (emphasis added). Furthermore, even if the Court were to assume *arguendo* that all relevant agreements were wholly Plaintiff-friendly, and barred The Christ Hospital from changing Plaintiff's status without his consent, Plaintiff fails to offer any evidence that he was damaged by the change in status. Plaintiff has directed the

Court to no record evidence suggesting that his financial exposure would have been less as an inpatient, or that the change in status otherwise placed Plaintiff in a worse position. Plaintiff has suggested throughout his papers that The Christ Hospital has been less than forthcoming with "answers" regarding his financial liability, but a party may not blame previously unraised discovery disputes as a shield to avoid summary judgment. *Patterson v. Best Buy Co.*, No. 1:13-cv-49, 2015 U.S. Dist. LEXIS 6132, at *2-3 (S.D. Ohio Jan. 20, 2015) (Black, J.). On this record, the Court can only speculate regarding how the change in status affected Plaintiff, if at all. This failure in proof is fatal to Plaintiff's claim. *Kline v. Mortg. Elec. Registration Sys.*, 704 F. App'x 451, 463-465 (6th Cir. 2017).[3]

Accordingly, Defendant The Christ Hospital is entitled to judgment as a matter of law on Plaintiff's breach of contract claim.

b. Violations of the Consumer Sales Practices Act

Defendant The Christ Hospital also seeks judgment in its favor on the CSPA claims.

---

[3] Furthermore, the Court is not persuaded by Plaintiff's vague argument regarding the loss of "significant billable hours," and his expenditure of "office resources," in his "quest for an answer." (Doc. 20, PageID 298). Even assuming Plaintiff sustained his summary judgment burden on breach, which he has not, the foregoing assertions regarding his purported damages are supported by a legally defective affidavit. See §II.A.2, *supra*. Second, even treating the assertions as valid evidence, Plaintiff offers no authority supporting his entitlement to the value of lost billable hours as recoverable consequential damages. If the Court accepted this argument, any attorney-plaintiff could use such a theory to essentially recover attorneys' fees where no such entitlement exists. *See, e.g., Shore Chan Bragalone Depumpo LLP v. Greenwich Ins. Co.*, 904 F. Supp. 2d 592, 601-02 (N.D. Tex. 2012) ("The mere fact that Plaintiffs are involved in the legal profession does not grant them some special entitlement to compensation for the lost time and effort they expended[.]"). While *Shore Chan* is neither identical nor binding, the Court finds its logic instructive.

1. Ohio Rev. Code 1345.02

Ohio Rev. Code § 1345.02(A) provides that "[n]o supplier shall commit an unfair or deceptive act or practice in connection with a consumer transaction." Proof of intent to deceive is not required; it is sufficient that the conduct complained of "has the likelihood of inducing in the mind of the consumer a belief which is not in accord with the facts." *Firelands Reg'l Med. Ctr. v. Jeavons*, 6th Dist. Erie No. E-07-068, 2008-Ohio-5031, ¶35 (citation omitted). *Accord*: *Liggins v. May Co.*, 53 Ohio Misc. 21.

Plaintiff alleges that The Christ Hospital violated Ohio Rev. Code §1345.02 "in undertaking acts, repeated demands of obligations not owed by the plaintiff and forwarding the same to a collection agency, that were unfair and deceptive." (Doc. 6, ¶18). In his opposition papers, Plaintiff more specifically argues that The Christ Hospital never clarified its bills and instead sent a portion of the total debt associated with his hospital stay to a collection agency, creating confusion regarding his total liability. However, the Court has been unable to locate any authority supporting that The Christ Hospital violated the CSPA by sending only one of Plaintiff's two, separate accounts – one of which The Christ Hospital was collecting on behalf of The Christ Hospital Medical Specialists, LLC (Doc. 24, PageID 319) – to collections. Prior to sending Plaintiff to collections, Defendant The Christ Hospital sent Plaintiff bills for the hospital visit (Account 6068) that were clearly marked as "a bill from your hospital," and asked that payment be made to "The Christ Hospital Health Network." (Doc. 17-8). Separately, it sent Plaintiff physician services bills (Account 6868) that were clearly marked as "a bill from your physician," and asked that payment be made to "The Christ Hospital Medical Specialists, LLC." (Doc. 17-7). The bills all bore the proper account number. (Doc. 17-

7)(Doc. 17-8).  Furthermore, the "Consent for Hospital and Medical Treatment" that Plaintiff signed, prior to admission, foreshadowed that Plaintiff might be invoiced for hospital and physician bills separately.  Specifically, Plaintiff agreed to "pay the amount of the *hospital bill <u>and</u>* any *physician charges* in accordance with their regular rates and terms." (Doc. 17-1, Hicks Aff., ¶6); (Doc. 17-3) (emphases added).

Based on the law and facts before the Court, the Court can find nothing unlawful in sending the physician services account to collections, while The Christ Hospital attempted to collect payment on a wholly separate account.  And, even if the Court were to assume (without finding) that Defendant Controlled Credit Corporation later created confusion, no facts or law before the Court suggest that Defendant The Christ Hospital is responsible.

Finally, the Court is not persuaded by the caselaw cited by Plaintiff.  To support that the debt referral violated the CSPA, Plaintiff relies on *Afwerki v. Anaya*, 868 F. 3d 771 (9th Cir. 2017).  In *Afwerki*, the Ninth Circuit addressed the materiality of "modest overstatements of an amount due and an interest rate" under the FDCPA and the Rosenthal Act.  *Id.* at 773.  The Court agrees with The Christ Hospital that *Afwerki* is inapposite.  Ultimately, Plaintiff has not directed the Court to record evidence suggesting that The Christ Hospital engaged in conduct that the CSPA was designed to guard against, such as making false statements of fact, false statements about what will happen if the consumer fails to satisfy the claim, or misrepresentations about the law. *See, e.g., Liggins v. May Co.*, 53 Ohio Misc. 21.

### 2.  Ohio Rev. Code 1345.03

Plaintiff also seeks to recover under Ohio Rev. Code § 1345.03, which states:

> (A) No supplier shall commit an unconscionable act or practice in connection with a consumer transaction. Such an unconscionable act or practice by a supplier violates this section whether it occurs before, during, or after the transaction.
> (B) In determining whether an act or practice is unconscionable, the following circumstances shall be taken into consideration: . . .
> (4) Whether the supplier knew at the time the consumer transaction was entered into that there was no reasonable probability of payment of the obligation in full by the consumer; . . .

Unlike Ohio Rev. Code § 1345.02, in order to establish that a supplier committed an unconscionable act under R.C. 1345.03, the consumer must demonstrate that the supplier acted knowingly. *See Karst v. Goldberg*, 88 Ohio App.3d 413, 417, 623 N.E.2d 1348 (10th Dist. 1993).

Here, Plaintiff has not cited any record evidence of The Christ Hospital committing any unconscionable or deceptive acts in violation of the CSPA. *See Firelands Reg'l Med. Ctr. v. Jeavons*, 6th Dist. Erie No. E-07-068, 2008-Ohio-5031 (patient's claim against medical center alleging violation of CSPA was properly dismissed as the plaintiff failed to offer any facts that the center engaged in a deceptive act, knowingly or otherwise).

Accordingly, Plaintiff's CSPA claims fail as a matter of law.

### c. Counterclaim for $2,682.00

Defendant The Christ Hospital counterclaims for the money Plaintiff owes, based on an "account stated" theory.

An account stated can arise from a full range of different business and financial arrangements. *Lichter v. S.T. Kenyon & Co.*, 101 Ohio App. 76, 79, 137 N.E.2d 782 (1956). An account stated is a contract, whether express or implied, and arises from an

agreement or acknowledgement of the balance due as a result of a series of transactions or a course of dealing. *Creditrust Corp. v. Richard*, C.A. Case No. 99-CA-94, 2000 Ohio App. LEXIS 3027, at *11-12 (Ct. App. July 7, 2000) ("An account stated is predicated upon prior transactions which create a debtor-creditor relationship between the parties to the account."). *Accord*: 1 Ohio Forms of Pleading and Practice Form 8:2 (2018). Courts frequently state that the balance must be absolute and unconditional, but something short is often accepted, where (for example) there is no record of dispute relating to any of the items or a sustained failure to object. *See*, *e.g.*, *Creditrust*, 2000 Ohio App. LEXIS 3027, at *12.

The form of the account stated can be simple or complex. 8 Ohio Transaction Guide § 143.25 (2018). It can be a mutual running account between the parties, tracking their transactions. *Id*. It can be a ledger sheet or an accounts receivable record. *Id*. There should be a summary of the running balance or an arrangement that permits the calculation of the balance claimed to be due. *Capital One Bank v. Toney*, 7th Dist. No. 06JE28, *2007-Ohio-1571, ¶6*; *Brown v. Columbus Stamping & Mfg. Co., 9 Ohio App. 2d 123, 223 N.E.2d 373 (1967)*. A simple invoice is not an account stated. *See Personal Income Consultants, Inc. v. Mamone,* 20 Ohio App. 3d 273, 485 N.E.2d 781 (1984).

The value of an account stated, other than the fact that it clarifies the status of the debtor's account, is that an action can be brought on an account stated as an alternative to an action for breach of contract. *See Blanchester Lumber & Supply, Inc. v. Coleman (1990), 69 Ohio App.3d 263, 590 N.E.2d 770*; *Personal Income Consultants, Inc. v. Mamone, 20 Ohio App. 3d 273, 485 N.E.2d 781 (1984)*. In order to

establish a prima facie case for money owed on an account, the following

"fundamentals" must be present:

> An account must show the name of the party charged. It begins with a balance, preferably at zero, or with a sum recited that can qualify as an account stated, but at least the balance should be a provable sum. Following the balance, the item or items, dated and identifiable by number or otherwise, representing charges, or debits, and credits, should appear. Summarization is necessary showing a running or developing balance or an arrangement which permits the calculation of the balance claimed to be due.

*Johncol, Inc. v. Cardinal Concession Servs., L.L.C.*, 2017-Ohio-9031, ¶ 18, 101 N.E.3d 1014, 1020 (Ct. App.). "[A]n action upon an account may be proved by introduction of business records showing the existence of the account." *Wolf Automotive v. Rally Auto Parts, Inc.* (1994), 95 Ohio App.3d 130, 137. *See also, Citibank, N.A. v. Katz*, 8th Dist. No. 98573, 2013-Ohio-1041, ¶12 (affidavit and account statements sufficient to meet burden of establishing prima facie case for money owed on account where such materials established the existence of account, purchases made, and final balance owed); *Citibank (South Dakota) N.A. v. Ogunduyile,* 2nd Dist. No. 21794, 2007-Ohio-5166, ¶ 12 (copies of monthly account statements and affidavit of bank representative authenticating statements submitted in support of motion for summary judgment sufficient to establish prima facie case for money owed on account).

Here, the Court is not convinced that the evidence establishes entitlement to recovery under an account stated theory. While the documentation establishes various charges, all were incurred in connection with a single transaction *(i.e.*, Plaintiff's hospitalization on May 26 and May 27, 2016). The evidence before the Court hardly

establishes that the balance due was agreed or acknowledged as a result of a series of transactions, or a course of dealing between the parties. *Creditrust Corp. v. Richard*, C.A. Case No. 99-CA-94, 2000 Ohio App. LEXIS 3027, at *11-12 (Ct. App. July 7, 2000); 1 Ohio Forms of Pleading and Practice Form 8:2 (2018). While the Court believes that these sums may be legally recoverable under any number of theories, the Court is not convinced that "account stated" is one of them. Even if they are recoverable under such a theory, it was The Christ Hospital's burden to establish that it is entitled to judgment as a matter of law under an account stated theory; however, The Christ Hospital failed to sustain its burden with authority cited and documentation submitted.

3. Motion for Summary Judgment of Defendant Controlled Credit Corporation

Plaintiff alleges that Defendant Controlled Credit Corporation violated the Fair Debt Collection Practices Act ("FDCPA"). (Doc. 6, PageID 37-39). Specifically, Plaintiff alleges that Defendant Controlled Credit Corporation: (a) made false or misleading representations; (b) failed to provide certain disclosures; (c) acted in a harassing and abusive manner; (d) acted in an unfair and deceptive manner; and (e) failed to verify his debt. (*Id.*) Each theory will be addressed in turn.

a. False or Misleading Representations

Plaintiff alleges that Defendant Controlled Credit Corporation made "false or misleading representations as to the nature of the debt or the status of the party alleged to be collecting the debt under the Fair Debt Collection Practices Act 15 U.S.C. §1692(B1)(B2)(B3)(B4)." (Doc. 6, PageID 37).

18

At the outset, Defendant Controlled Credit Corporation observes that 15 U.S.C. §
1692b governs a debt collector's acquisition of location information about consumers,
which has no bearing on this case, while false or misleading representations in
connection with the collection of a debt are addressed by 15 U.S.C. § 1692e.  The
foregoing section generally provides that "[a] debt collector may not use any false,
deceptive, or misleading representation or means in connection with the collection of
any debt."  It sets forth sixteen non-exhaustive examples of conduct that would violate
the general prohibition against using false, deceptive, or misleading representations. *Id*.

To support that Defendant Controlled Credit Corporation made false or
misleading representations, Plaintiff argues that: (1) Defendant Controlled Credit
Corporation misidentified the actual creditor; and (2) in demanding a partial amount of
the total sum due in connection with his hospital stay as "payment in full," Defendant
Controlled Credit Corporation violated the least sophisticated debtor rule.  Specifically,
on the latter point, Plaintiff argues that:

> In demanding a fractional sum of the amount allegedly owed
> to The Christ Hospital, it misrepresented the amount of the
> actual debt alleged to be owed and the least sophisticated
> debtor in accepting said representation could easily have
> been misled as to the character of the debt because, in
> satisfying the demand of CCC to "send payment in full" of
> "482.82" . . . there would then be remaining amounts claimed
> due as is seen from the Counterclaim and Motion for
> Summary Judgment of The Christ Hospital.  (Doc. 18,
> PageID 232).

First, the Court is not persuaded by Plaintiff's argument that Defendant
Controlled Credit Corporation misidentified the creditor.  The record evidence supports
that:  on October 23, 2016, two debts in Plaintiff's name were placed with Controlled

Credit Corporation for collection by The Christ Hospital Medical Specialists, LLC. *(*Doc. 16-1, PageID 100). The balances owed on those debts totaled $482.82. *Id.* Controlled Credit Corporation then sent Plaintiff two letters about the debts owed to The Christ Hospital Medical Specialists, LLC. *Id.* Those letters both identified Plaintiff's balance as $482.82 and referenced the creditor as "The Christ Hospital MS." *Id.* at 108-09. Defendant Controlled Credit Corporation persuasively argues that the fact that "TCH [*i.e.*, The Christ Hospital] itself was and is also attempting to collect from Plaintiff does not provide Plaintiff with a legitimate basis to claim that CCC *misrepresented* the identity of *TCH MS.*" (Doc. 23, PageID 309) (emphasis added). While it is true that Defendant Controlled Credit Corporation abbreviated "Medical Specialists" with "MS," no authority before the Court suggests that "misrepresentation" occurs in such circumstances.

Second, the Court is not persuaded by the argument that Defendant Controlled Credit Corporation misleadingly demanded a "fractional sum" in violation of the least sophisticated consumer rule. It *appears* that Plaintiff is attempting to hold Defendant Controlled Credit Corporation liable because it was collecting on the The Christ Hospital Medical Specialists, LLC account, which is allegedly confusing in light of the fact that Plaintiff also owed money to The Christ Hospital. Yet, accepting these facts as true, the Court fails to see how Defendant Controlled Credit Corporation is liable under 15 U.S.C. § 1692e. Plaintiff seemingly suggests that a debt collector should yield when collecting a debt placed in its hands by a creditor, based on some hypothetical possibility that the debtor might also owe money to another entity and be confused as to its total financial exposure. No authority before the Court supports placing such a burden on entities governed by the FDCPA.

Finally, the Court would note that Plaintiff advances an additional argument to support his theory that Defendant Controlled Credit Corporation made false or misleading representations, *i.e.*, that Defendant Controlled Credit Corporation unlawfully continued its collection efforts after Plaintiff requested verification. However, debt verification is governed by15 U.S.C. § 1692g(b), not by15 U.S.C. § 1692e.

Accordingly, Plaintiff's FTCPA claim fails to the extent that Plaintiff seeks relief for allegedly false or misleading representations.

(b) Failure to Provide Certain Disclosures

Section 1692g(a) of the FDCPA requires that debt collectors "send the consumer a written notice containing—

> (1) the amount of the debt;
>
> (2) the name of the creditor to whom the debt is owed;
>
> (3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;
>
> (4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and
>
> (5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

Defendant Controlled Credit Corporation avers that it sent Plaintiff a notice with all of the required disclosures, and provides the Court a copy. (Doc. 16-1, Stockelman Aff., ¶7) (*id.* at 108). The record evidence establishes that it was not returned to Defendant Controlled Credit Corporation as undeliverable (Id. at ¶6). Plaintiff maintains (without citation to the record) that he never received the notice. (Doc. 18, PageID 231).[4]

Even accepting as true that Plaintiff never received the initial notice, the evidence before the Court supports that Defendant Controlled Credit Corporation fulfilled its obligations by sending the notice in the mail. *Johnson v. Midland Credit Mgmt. Inc.*, 2006 WL 2473004, *11 (N.D.Ohio Aug. 24, 2006) ("The plain language of section 1692g(a) does not require that a Validation of Debt Notice must be received by a debtor. Instead, the plain language states that such a Notice need only be sent to a debtor.").

Accordingly, Plaintiff's FDCPA claim fails to the extent that Plaintiff seeks relief for the alleged failure to provide Section 1692g(a) disclosures.

### (c) "Harassing and Abusive" Conduct

The FDCPA prohibits debt collectors from engaging in "any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt." 15 U.S.C. § 1692d. In the foregoing section, Congress has enumerated six specific examples of conduct by a debt collector that would be considered harassing, oppressive, or abusive. *Id.*

Defendant Controlled Credit Corporation maintains that it engaged in no harassing or abusive conduct. (Doc. 18, PageID 235). In opposition, Plaintiff relies on

---

[4] Plaintiff cites to his defective affidavit. Notwithstanding the affidavit's deficiencies, the affidavit does not support the proposition for which it is cited.

his post-lawsuit correspondence with counsel for Defendant Controlled Credit Corporation which made him feel "harassed and oppressed." (*Id.*) Even accepting this assertion as true, the post-lawsuit conduct of Defendant Controlled Credit Corporation's attorneys falls outside the scope of activities prohibited by 15 U.S.C. § 1692d. *See e.g.*, *Delawder v. Platinum Fin. Services Corp.*, 443 F.Supp.2d 942, 948-949 (S.D. Ohio 2005) (holding that plaintiff's allegation that defendant filed a lawsuit against him, and attached a false affidavit, were insufficient to state a claim under 1692d). *Accord*: *Gionis v. Javitch, Block & Rathbone*, 405 F.Supp.2d 856, 866 (S.D. Ohio 2005).

Accordingly, Plaintiff's FDCPA claim fails to the extent that Plaintiff seeks relief for using allegedly harassing and abusive tactics.

(d) "Unfair and Deceptive" Conduct

Plaintiff alleges that Defendant Controlled Credit Corporation engaged in "Unfair, Deceptive or Abusive Acts." *See* Doc. #6, PageID 38. It appears that Plaintiff is attempting to pursue relief under 15 U.S.C. § 1692f.

As an initial matter, 15 U.S.C. § 1692f generally prohibits debt collectors from using "unfair or unconscionable means to collect or attempt to collect any debt." That section also identifies eight examples of conduct that would be considered unfair or unconscionable. *Id.* Based on Plaintiff's sworn interrogatory answers, Plaintiff is basing his claim of unfair behavior by Defendant Controlled Credit Corporation on: (1) the December 23, 2016 email from defense counsel indicating that Defendant Controlled Credit Corporation would seek to recover the fees and costs it incurs; and (2) his belief that Defendant Controlled Credit Corporation should have verified his debts to The

Christ Hospital Medical Specialists, LLC prior to attempting to collect them. *See* Plaintiff Answers to Controlled Credit Corporation Interrogatories 18-19 (Doc. 16-2).

First, counsel's December 23, 2016 email to Plaintiff's counsel does not implicate any of 1692f's specifically enumerated violations. *See* 15 U.S.C. § 1692f(1)-(8). And, as discussed above, post-lawsuit conduct of a debt collector's counsel is not covered by any provision of the FDCPA.

Second, a debt collector is under no obligation to verify the information that was provided to it by a creditor when such accounts are initially placed with it for collection. *See Smith v. Transworld Sys., Inc.*, 953 F.2d 1025, 1032 (6th Cir. 1992); *Richeson v. Javitch, Block & Rathbone, LLP*, 576 F. Supp. 2d 861, 867 (N.D. Ohio 2008); *Cart v. Capital Mgmt. Servs., L.P.*, No. 1:13 CV 292, 2015 U.S. Dist. LEXIS 155965, at *19 (N.D. Ohio Nov. 18, 2015).

Accordingly, Plaintiff's FDCPA claim fails to the extent that Plaintiff seeks relief under 15 U.S.C. § 1692f.

### (e) Failure to Verify

Plaintiff's final allegation is that Defendant Controlled Credit Corporation violated the FDCPA by failing to "verify the debt." *(*Doc. 6, PageID 39). Plaintiff's allegation implicates the provisions of 1692g. *See* 15 U.S.C. § 1692g(b). That section states that a debt collector, upon receipt of a consumer's dispute, "shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt or a copy of a judgment, or the name and address of the original creditor, and a copy of such verification or judgment, or name and address of the original creditor, is mailed to the consumer by the debt collector." *Id.* However, 15 U.S.C. § 1692g(b) does not

require a debt collector to validate a debt if it ceases collection activity. *See Purnell v. Arrow Fin. Servs., LLC*, No. 07-1903, 2008 U.S. App. LEXIS 25488, at *17 (6th Cir. 2008). Essentially, the debt collector has a choice: verify the debt and continue collection activities or not verify and cease collection activities. *Id.* (*citing Jang v. A.M. Miller & Assocs.*, 122 F.3d 480, 483 (7th Cir. 1997)).

In this case, the evidence in the record establishes that Defendant Controlled Credit Corporation received Plaintiff's November 21, 2016 letter on November 28, 2016. (Doc. 16-1*,* Stockelman Aff., ¶8). After receiving Plaintiff's letter, on December 1, 2016, Defendant Controlled Credit Corporation requested an itemization of Plaintiff's TCH MS debts. (*Id.* at ¶9). One week later, on December 7, 2016, and before engaging in any additional collection activities, Defendant Controlled Credit Corporation decided to cease collection efforts on Plaintiff's TCH MS accounts. (*Id.* at ¶13).  Because Defendant Controlled Credit Corporation ceased all of its collection activities while it was waiting to receive the itemization requested by Plaintiff, Defendant Controlled Credit Corporation did not violate 15 U.S.C. § 1692g(b). *See Purnell*, 303 Fed.Appx. at 303; *Jang*, 122 F.3d at 483.

Accordingly, Plaintiff's FDCPA claim fails to the extent that Plaintiff seeks relief under 15 U.S.C. § 1692g.

### III. CONCLUSION

Therefore, consistent with the above:

(1) Defendant The Christ Hospital's Motion for Summary Judgment (Doc. 17) is **GRANTED** to the extent that it seeks judgment in its favor on Plaintiff's breach of contract and CSPA claims, and **DENIED** to the extent that it seeks judgment in its favor on its own account stated claim;

(2) Defendant Controlled Credit Corporation's Motion for Summary Judgment (Doc. 16) is **GRANTED,** and judgment is entered in favor of Defendant Controlled Credit Corporation on Plaintiff's FDCPA claims; and

(3) Defendant Controlled Credit Corporation's Motion to Strike (Doc. 22) is **GRANTED IN PART** and **DENIED IN PART**.

McIntosh and The Christ Hospital are instructed to confer regarding their availability for

a telephone status conference, and to contact the Court regarding the same.

      **IT IS SO ORDERED.**

                                     *s/Michael R. Barrett*
                                  United States District Judge